## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Brandon Keller, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 3:15-cv-107 |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Chad Pringle, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Brandon Keller (Keller) petitioned for habeas relief under 28 U.S.C. § 2254. (Doc. #1). After preliminary review, the court ordered service on the respondent. (Doc. #3). The respondent moved to dismiss the habeas petition, (Doc. #7), and Keller has responded to that motion, (Doc. #12).

### Summary of Recommendation

In his petition, Keller alleges that improper jury instructions resulted in him being convicted of two crimes which the North Dakota Supreme Court later held were incognizable. Specifically, he contends that the state district court violated his due process rights when it instructed the jury that Keller could be found guilty of conspiracy to commit, and attempt to commit, an unintentional murder—murder under circumstances manifesting an extreme indifference to the value of human life. Recent cases held both crimes were incognizable under North Dakota law, since extreme indifference murder is a <u>general</u> intent crime and both conspiracy to commit murder and attempted murder are <u>specific</u> intent crimes.

This court concludes, however, that Keller's claims concerning jury instructions are barred by the statute of limitations and that he is not entitled to equitable tolling of the one-year limitation period. The other claims Keller asserts are not cognizable in a

federal habeas petition. Accordingly, Keller's petition for habeas relief should be dismissed.

## Background

On December 12, 2003, a jury found Keller guilty of (1) conspiracy to commit murder, (2) attempted murder, and (3) reckless endangerment.[1] (Resp. Ex. #5; Resp. Ex. #6; Resp. Ex. #7). Keller appealed, and the North Dakota Supreme Court affirmed the criminal judgment on August 18, 2005. State v. Keller, 695 N.W.2d 703 (N.D. 2005).

On the attempted murder charge, the state district court instructed the jury on both intentional murder and extreme indifference murder: "A person is guilty of Attempted Murder if he either intentionally or knowingly attempts to cause the death of another human being; or if he willfully attempts to cause the death of a human being under circumstances manifesting extreme indifference to the value of human life." (Resp. Ex. #4, p. 11). Additionally, the state district court instructed the jury as to the essential elements of the attempted murder charge:

> The burden of proof resting upon the State is satisfied—only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:
> That on or about the 2nd–3rd day of August, 2003, in Burleigh

---

[1] The state district court sentenced Keller to five years of imprisonment on the reckless endangerment conviction and to twenty years of imprisonment on both the conspiracy to commit murder and attempted murder convictions. (Resp. Ex. #8). The state district court ordered that the two twenty-year sentences be served concurrently and that those sentences be served consecutively to the five-year sentence. Id.

On April 27, 2004, Keller filed a pro se motion for reduction of his sentences, id., and on June 11, 2004, his trial counsel filed a motion for modification of his sentences, (Resp. Ex. #11). On June 18, 2004, the state district court denied those motions, and within that order, the court clarified that the five-year sentence is to be served consecutively to the two twenty-year sentences. (Resp. Ex. #13).

County, North Dakota, the Defendant, Brandon Keller,

      1.   Attempted to cause the death of a Bismarck Police Officer intentionally or knowingly; or

      2.   Attempted to cause the death of a Bismarck Police Officer under circumstances manifesting extreme indifference to the value of human life.

Id. The attempted murder verdict form did not require the jury to specify whether its verdict was based on evidence of intentional murder or of extreme indifference murder. (Resp. Ex. #6).

On the conspiracy to commit murder charge, the state district court instructed the jury that "[a] person commits Criminal Conspiracy if that person agrees with one or more persons to engage in or cause conduct constituting an offense, and any one or more of those persons acts overtly to effect an objective of the conspiracy." (Resp. Ex. 4, p. 9). Additionally, the state district court instructed the jury as to the essential elements of conspiracy to commit murder:

      The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged that:

      1.   On or about the 1st day of July and the 31st day of July, 2003, in Burleigh County, North Dakota,

      2.   The Defendant, Brandon Keller,

      3.   Agreed with one or more persons to engage in or cause conduct which, in fact, constituted the offense of murder,

      4.   And any one or more persons performed the overt act of:

         a.   Obtaining weapons; or

         b.   Obtaining ammunition; or

         c.   Acquiring black clothing; or

         d.   Acquiring ski masks; or

         e.   Acquiring face paint.

Id. at 10. The conspiracy to commit murder verdict form, like the attempted murder verdict form, did not require the jury to specify whether its verdict was based on evidence of intentional murder or of extreme indifference murder. (Resp. Ex. #5).

On direct appeal, Keller alleged insufficiency of the evidence to support the

conspiracy to commit murder and attempted murder convictions and that the district

court erred in failing to instruct the jury on lesser included offenses. (Resp. Ex. #15).

Keller's brief on direct appeal included the following statement regarding the jury

instruction on attempted murder:

> Keller objected to the trial court's jury instruction on the elements of the
> offense of attempted murder. Keller's objection was based upon the premise
> that it was erroneous for the court to instruct the jury on attempted murder
> by the commission of acts under circumstances manifesting extreme
> indifference to the value of human life because that would be, in effect, a
> contradiction in terms, namely, intentionally acting recklessly. The court
> declined to change its proposed instruction and the jury was given
> instructions on attempted murder as proposed by the trial court and
> advocated by the State.

Id. at 8 (internal citations omitted). In affirming Keller's convictions, the North Dakota

Supreme Court did not address the contradictory language of the attempted murder

instruction. The court, however, stated:

> Under [N.D. Cent. Code §§ 12.1-12-01(a) and (b)] and the charges in this case,
> Keller was guilty of conspiracy to commit murder if he agreed with Sherman
> to intentionally or knowingly cause the death of another or to cause the death
> of another under circumstances manifesting extreme indifference to the value
> of human life, and if either Keller or Sherman committed an overt act in
> furtherance of that agreement.

State v. Keller, 695 N.W.2d 703, 712 (N.D. 2005). The court's decision, however, did not

rest on that language. Rather, the court concluded that Keller was not entitled to lesser

included offense instructions and that the evidence was sufficient to support Keller's

convictions. Id. at 713-17.

Subsequent to Keller's convictions, the North Dakota Supreme Court decided

three cases addressing the intent required to convict for conspiracy to commit murder

and for attempted murder—<u>State v. Borner</u>, 836 N.W.2d 383 (N.D. 2013), <u>Dominguez v.</u> <u>State</u>, 840 N.W.2d 596 (N.D. 2013), and <u>Coppage v. State</u>, 843 N.W. 2d 291 (N.D. 2014). In <u>Borner</u>, the court interpreted the state's conspiracy statute and held that "conspiracy to commit murder requires a finding of intent to cause death and cannot be based on the theory of murder under N.D.C.C. § 12.1-16-01(1)(b), extreme indifference murder," since extreme indifference murder is unintentional. 836 N.W.2d at 386, 391. In <u>Dominguez</u>, the court interpreted the state's attempt statute and held that "attempted murder, under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(b) [extreme indifference murder], is not a cognizable offense," since "attempt is a specific intent crime, requiring an intent to commit the underlying offense" and "[m]urder committed under circumstances manifesting an extreme indifference to the value of human life results in an unintentional death." 840 N.W.2d at 603. In <u>Coppage</u>, the court granted the petitioner post-conviction relief, concluding that the jury had found him guilty of an incognizable offense—attempted murder under circumstances manifesting an extreme indifference to the value of human life. 843 N.W. 2d at 303.

On May 19, 2014, after the North Dakota Supreme Court's decisions in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u>, Keller filed a motion to correct his sentence pursuant to North Dakota Rule of Criminal Procedure 35(a). (Resp. Ex. #18). Keller argued that his attempted murder conviction should be vacated, since the instructions allowed the jury to find him guilty of attempted murder under the extreme indifference statute. <u>Id.</u> In other words, he argued he might have been convicted of an incognizable offense. The state district court denied Keller's Rule 35 motion, finding that Rule 35 did not apply since Keller did not seek to correct an illegal sentence, but rather sought retroactive

application of subsequent North Dakota Supreme Court decisions to his case. (Resp. Ex. #20).

On August 8, 2014, Keller file a state post-conviction relief application, in which he argued that his conspiracy to commit and attempt to commit murder convictions should be vacated, since the jury could have found him guilty of incognizable offenses—conspiracy to commit murder and attempted murder under circumstances manifesting extreme indifference. (Resp. Ex. #22). The state district court dismissed the application as barred by the two-year limitation of North Dakota Century Code section 29-31.1-01(2). (Doc. #24). Keller appealed, and the North Dakota Supreme Court affirmed the state district court's order on statute of limitations grounds. Keller v. State, 869 N.W.2d 424 (N.D. 2015).

Under North Dakota Century Code section 29-32.1-01(2), Keller was required to file his post-conviction relief application within two years of his convictions becoming final. Keller did not assert that his application was filed within that two-year limitation period; rather, he contended that an exception to the state's statute of limitations applied. (Resp. Ex. #22, p. 3). Under North Dakota Century Code section 29-32.1-01(3)(a)(3), the state courts may consider otherwise untimely post-conviction relief applications if "[t]he petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States supreme court or a North Dakota appellate court and the petitioner establishes that the interpretation is retroactively applicable to the petitioner's case." After considering that exception, the state courts determined that Keller had not satisfied its requirements. See Keller v. State, 869 N.W.2d 424, 434 (N.D. 2015).

With regard to Keller's conspiracy to commit murder conviction, the North

Dakota Supreme Court considered that the charging document did not specify a

category of murder, the jury instructions did not provide the jury with a choice

regarding the category of murder, and that neither the charging document nor the

instructions referenced extreme indifference murder. Id. at 432-33. The court also

stated that the evidence supported a conspiracy between Keller and his co-conspirator,

Michael Sherman, to kill law enforcement officers, noting:

> There was evidence that Sherman had talked about a "plan" to avoid being
> arrested and sent back to jail if confronted by law enforcement officers. That
> plan included using hostages and killing law enforcement officers. Although
> Keller admits he may have planned to use hostages if confronted by the
> police, he claims he never intended to kill any police officers and did not
> agree to a plan to kill police officers. However, in a statement to police shortly
> after being arrested, Keller acknowledged that he and Sherman had talked
> about a "shootout" and about "shooting cops." Moreover, there was evidence
> that, as between Sherman and Keller, Sherman was the person in charge, and
> the circumstances in this case support an inference that Keller implicitly
> agreed to the plan.

Id. at 433-34. The court concluded that the jury had convicted Keller of conspiracy to

commit intentional murder rather than extreme indifference murder:

> [B]ecause the information and jury instructions did not reference extreme
> indifference to the value of human life, and considering the facts of the case
> included a plan to kill a law enforcement officer, it is logical that the jury
> properly found Keller guilty of conspiring to commit intentional murder
> under N.D.C.C. § 12.1-06-04 and N.D.C.C. § 12.1-16-01(1)(a), rather than §
> 12.1-16-01(1)(b). As such, Keller has not established this Court's holding in
> Borner relates to his case.

Id. at 434.

With regard to Keller's attempted murder conviction, the North Dakota Supreme

Court considered that the charging document alleged only intentional conduct; "[t]he

defendant, acting with the kind of culpability otherwise required for commission of a

7

crime, <u>intentionally</u> engaged in conduct which, in fact, constitutes a substantial step

toward the commission of the crime of murder; specifically, the defendant discharged a

firearm at a Bismarck Police Officer." <u>Id.</u> at 431. Additionally, the court determined that

the jury instruction language, "[a]ttempted to cause the death," described intentional

attempted murder. <u>Id.</u> The court concluded:

> Because both of the attempted murder instruction options for the jury
> required it to find Keller intentionally attempted to murder a police officer,
> it is not possible the jury found Keller guilty of the incognizable offense of
> attempted murder under circumstances manifesting extreme indifference to
> human life. Accordingly, as to the attempted murder conviction, we conclude
> Keller has not established part one of the two-part analysis under N.D.C.C.
> § 29-32.1-01(3)(a)(3)—the existence of a new interpretation of statutory law
> that is applicable to his case and falls within an exception to the two-year
> statute of limitations for filing a post-conviction relief application.

<u>Id.</u> The court further concluded that since Keller had failed to demonstrate that a new

interpretation of law applied to his case, it did not need to determine whether the

interpretation should be applied retroactively, and that the exception to the state's two

year limitation period for post-conviction relief did not apply. <u>Id.</u> at 434.

In dissent, North Dakota Supreme Court Chief Justice VandeWalle disagreed

with the majority's conclusion that the jury could not have found Keller guilty of an

incognizable offense:

> Under the facts of this case, attempted murder under § 12.1-16-01(b) should
> never have been charged or instructed upon by the trial court. But it was
> charged, the instruction was given and subsection b was argued to the jury as
> an alternative basis for conviction by the State. As the majority opinion notes,
> there was no special verdict form provided to the jury asking the jury to find
> whether or not Keller was guilty of attempted murder under subsection (1)(a)
> or subsection (1)(b). To the extent the jury might have found Keller guilty of
> attempted murder under subsection (1)(b), Keller was found guilty of an
> incognizable crime, i.e., a crime which does not exist. Because no statute of
> limitations can justify denying review of a judgment of conviction for a crime
> that does not exist, under the circumstances of this case I would reverse the

judgment convicting Keller of attempted murder.

Id. at 435.

## Habeas Petition

In his petition, Keller alleges that the state district court violated his due process rights because it instructed the jury that it could find him guilty of incognizable offenses. (Doc. #1, p. 5). Keller further alleges that the state courts violated his due process and equal protection rights in holding that his August 8, 2014 post-conviction relief application was precluded from state court review by the state statute of limitations.[2] Id. at 6; (Doc. #12, p. 16).

## Standard of Review

Keller's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, various conditions must be met before a federal court can consider a petitioner's claims on the merits—the claims must be timely and must be properly exhausted before the state courts. Even when the AEDPA allows the court to consider claims on the merits, the standard of review is extremely narrow. Federal habeas relief may not be granted unless the state court's decision was contrary to or an unreasonable application of federal law, or unless the decision was an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

---

[2] It is unclear whether Keller also asserts claims of ineffective assistance of post-conviction relief counsel or irregularities in the state post-conviction relief proceedings. (See Doc. #1, pp. 1, 4). To the extent that he raises those claims, they are addressed below. See infra Non-Cognizable Claims, pp. 16-18.

Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court further stated, "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state court proceedings." Id. Ninth Circuit Judge Stephen Reinhardt has described the Supreme Court's construction of the AEDPA as resembling:

> a twisted labyrinth of deliberately crafted legal obstacles that make it as difficult for habeas petitioners to succeed in pursuing the Writ as it would be for a Supreme Court Justice to strike out Babe Ruth, Joe DiMaggio, and Mickey Mantle in succession--even with the Chief Justice calling balls and strikes.

Stephen R. Reinhardt, The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences, 112 Mich. L. Rev. 1219, 1220 (2015). It is against those standards that the court considers whether Keller's habeas petition was filed within the AEDPA's time limitations.

## Statue of Limitations

The AEDPA imposes a one-year statute of limitations for filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). Under the AEDPA, the one-year limitation period starts to run from the latest of several possible triggering dates, including the date on which a state court judgment became final by the conclusion of direct review or by the expiration of time for seeking such review, the date on which the constitutional right asserted was initially recognized by the Supreme Court, or the date on which the factual predicate of the claims could have been discovered through exercise of due diligence. 28 U.S.C. §§ 2244(d)(1)(A), (C), and (D).

10

**1.      Section 2244(d)(1)(A)—Conclusion of Direct Review**

Keller does not dispute that his habeas petition is time-barred if the triggering

date is the date on which the state court judgment became final. See 28 U.S.C. §

2244(d)(1)(A). The North Dakota Supreme Court affirmed the state district court's

judgment of conviction on August 18, 2005, State v. Keller, 695 N.W.2d 703 (N.D.

2005); Keller had ninety days from that date, or until November 16, 2005, to file a

petition for a writ of certiorari.[3] If viewed from conclusion of direct review, Keller's

one-year limitation period for filing a habeas petition started to run on November 17,

2005. Keller did not place his federal habeas petition in the prison mail until November

11, 2015, (Doc. #1, p. 8), nearly nine years after the one-year limitation period expired.[4]

Keller's claims that the state district court's jury instructions violated his due process

rights are therefore time-barred if 28 U.S.C. § 2244(d)(1)(A) applies.

**2.      Section 2244(d)(1)(C)—New Recognition of Constitutional Right**

Keller does not specifically contend that the one year limitation period was

triggered by the date on which the constitutional right asserted was initially recognized

by the Supreme Court. However, he states that "a new interpretation of a state

constitutional or statutory law[] by the state supreme court is retroactively applicable to

[his] case" and that "a significant change in substantive law has occurred which, in the

interest of justice, should be applied retrospectively." (Doc. #1, pp. 2, 4) (emphasis

---

[3] A petition for a writ of certiorari must be filed within ninety days of entry of the judgment or order sought to be reviewed. See U.S. Sup. Ct. R. 13.

[4] Neither Keller's May 19, 2014 Rule 35 motion nor his August 8, 2014 state post-conviction relief application tolled § 2244(d)(1)(A)'s limitation period, because that limitation period had expired prior to Keller filing both the motion and the application.

added). Employing a liberal interpretation to Keller's claims, the court therefore considers whether § 2244(d)(1)(C) applies.

The North Dakota Supreme Court's decisions in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u> held that conspiracy to commit murder and attempted murder under circumstances manifesting an extreme indifference to the value of human life are not cognizable offenses. But, any claim that those <u>state</u> cases triggered the AEDPA limitation period under § 2244(d)(1)(C) must fail.

Under § 2244(d)(1)(C), the AEDPA limitation period commences on "the date on which the constitutional right asserted was initially recognized by the [United States] Supreme Court, if the right has been newly recognized by the [United States] Supreme Court and made retroactively applicable to cases on collateral review." In <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u>, the North Dakota Supreme Court (not the United States Supreme Court) recognized that under state law (not federal law) an individual cannot conspire to commit, or attempt to commit, a murder that by its definition is unintentional. Since those cases were not United States Supreme Court cases initially recognizing a <u>federal</u> constitutional right, those decisions cannot be considered as triggering dates under § 2244(d)(1)(C).

### 3.     Section 2244(d)(1)(D)—Discovery of Factual Predicate

Keller contends that the factual predicate of his claim is the North Dakota Supreme Court's recognition in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u> that conspiracy to commit murder and attempted murder under the state statute governing extreme indifference murder are not cognizable offenses. (Doc. #12, pp. 9-11). Keller argues that under <u>Johnson v. United States</u>, 544 U.S. 295 (2005), a state court decision may

12

constitute a fact which triggers the one-year limitation period under § 2244(d)(1)(D). (Doc. #12, p. 11).

In <u>Johnson</u>, the Supreme Court held that a state court order vacating the petitioner's state court conviction—a conviction which had been used to enhance his federal sentence—was a new fact which triggered the one-year limitation period under 28 U.S.C. § 2255(f)(4).[5] The Court concluded that the order vacating the predicate offense was a fact "subject to proof or disproof," and that the petitioner could not have obtained habeas relief prior to the state vacatur. <u>Johnson</u>, 544 U.S. at 305-07.

Keller's case is distinguishable from <u>Johnson</u>. Unlike <u>Johnson</u>, Keller's case does not involve an order which affected his legal status in the underlying action. He does not raise a matter that is "subject to proof of disproof." Moreover, Keller could have challenged his convictions as violative of his due process rights prior to the North Dakota Supreme Court's decisions in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u>.[6]

---

[5] Under 28 U.S.C. § 2255(f)(4), AEDPA's one-year limitation period for federal prisoners to file habeas petitions is triggered on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Courts have applied AEDPA's one-year limitation period in the same manner in both § 2254 and § 2255 cases. <u>See</u> <u>United States v. Bendolph</u>, 409 F.3d 155, 164 (3d Cir. 2005) (stating that "there exist sound reasons to approach the AEDPA limitations period the same under both §§ 2254 and 2255"); <u>Johnson v. United States</u>, 340 F.3d 1219, 1224 (11th Cir. 2003) (interpreting "the limitations period of § 2255 consistently with the limitation period of § 2244," since "the Supreme Court commonly interprets § 2254 and § 2255 in light of each other") (citing <u>Lackawanna Cnty. Dist. Attorney v. Coss</u>, 532 U.S. 394, 402 (2001)); <u>United States v. Patterson</u>, 211 F.3d 927, 930 (5th Cir. 2000) (noting that the limitation provisions for §§ 2254 and 2255 are "nearly identical" and that "because of the similarity of the actions . . . federal courts have read them in pari materia as long as the context did not render it improper").

[6] <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u> may support Keller's claims, but Keller could have raised his claims prior to those decisions. Keller was aware of his claim regarding the attempted murder jury instructions at trial, as evidenced by his brief on direct appeal. Although he did not raise it as a distinct claim on direct appeal, his brief on

The North Dakota Supreme Court decisions in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u> interpreted the state's attempted murder and conspiracy statutes. A decision interpreting the law, however, cannot constitute a factual predicate of a claim under § 2244(d)(1)(D) or a fact supporting a claim under § 2255(f)(5), thereby triggering the one-year limitation period. <u>See</u> <u>E.J.R.E. v. United States</u>, 453 F.3d 1094, 1097-98 (8th Cir. 2006) (a federal court of appeals decision, unlike a predicate conviction, "is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved"); <u>Whiteside v. United States</u>, 775 F.3d 180, 183-84 (4th Cir. 2014) (an intervening change of law is not a fact supporting a claim); <u>Phillips v. United States</u>, 734 F.3d 573, 580 (6th Cir. 2013) (an intervening federal court of appeals decision was newly-discovered law, not a newly-discovered fact); <u>Lo v. Endicott</u>, 506 F.3d 572, 575-76 (7th Cir. 2007) (while a state court's decision modifying substantive law could arguably help the petitioner's claim, the decision did not constitute a factual predicate of the petitioner's habeas claims); <u>Shannon v. Newland</u>, 410 F.3d 1083, 1088 (9th Cir. 2005) ("If a change in (or clarification of) state law, by a state court, in a case in which [the petitioner] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless."). Since the North Dakota Supreme Court's interpretation of the

---

direct appeal stated that he had objected to the instruction on the elements of the offense of attempted murder, "based upon the premise that it was erroneous for the court to instruct the jury on attempted murder by the commission of acts under circumstances manifesting extreme indifference to the value of human life because that would be, in effect, a contradiction in terms, namely, intentionally acting recklessly." (Resp. Ex. #15, p. 8). He further stated that "[t]he court declined to change its proposed instruction and the jury was given instructions on attempted murder as proposed by the trial court and advocated by the State." <u>Id.</u> He argued that there was insufficient evidence of his intent to conspire to murder or to attempt to murder.

law in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u> cannot constitute the factual predicate of Keller's claims, § 2244(d)(1)(D) is inapplicable. Even if those decisions were considered to have established new state law, rather than to have interpreted existing state law, they would not qualify as a factual predicate under § 2244(d)(1)(D).

**4.    Equitable Tolling**

As a matter of equity, if a petitioner establishes sufficient reason, a court may toll the AEDPA statute of limitations. <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Id.</u> at 640 (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." <u>Flanders v. Graves</u>, 299 F.3d 974, 976 (8th Cir. 2002). Equitable tolling may be invoked in limited cases such as "when circumstances over which a prisoner has no control make it <u>impossible</u> to file a timely petition." <u>Id.</u> (emphasis added). Thus, the doctrine of equitable tolling provides an extremely narrow avenue for this court to consider an otherwise time-barred petition.

Keller does not contend that any extraordinary circumstance prevented him from filing a timely habeas petition, and as this court discussed above, <u>see</u> <u>supra</u> Section 3, pp. 13-14 n.6, Keller could have raised his due process claims prior to the North Dakota Supreme Court's decisions in <u>Coppage</u>, <u>Dominguez</u>, and <u>Borner</u>. This is therefore not one of the extremely few cases in which equitable tolling is warranted.

15

Though agreeing with the dissenting opinion in Keller's state post-conviction relief appeal, one must nonetheless conclude that the AEDPA does not allow this court to consider the merits of Keller's claims. As Chief Justice VandeWalle stated, under the language of the attempted murder instruction, Keller may have been found guilty of an incognizable crime—a crime that does not exist. Troubling as that may be, the undersigned concludes that the only triggering date supported by the record is that of § 2244(d)(1)(A), the date on which direct review of Keller's convictions was concluded.

**Non-Cognizable Claims**

Keller alleges the state courts violated his due process and equal protection rights by finding that his August 8, 2014 post-conviction relief application was precluded from review under North Dakota Century Code section 29-32.1-01(2). (Doc. #1, p. 6). Neither of the parties, however, directly addressed the AEDPA's one-year limitation period with regard to those claims.[7] If Keller's claims concerning the state's application of its statute of limitations were viable, the one-year period would not have started to run until after the North Dakota Supreme Court affirmed the state district court order denying post-conviction relief. See DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014) (holding that the statute of limitations in 28 U.S.C. § 2244(d)(1) applies to each claim within an application). Nevertheless, Keller is not entitled to relief on claims challenging application of the state statute of limitations, since this court is bound by the state courts' interpretation of the state statute of limitations; those claims are therefore not cognizable in a federal habeas petition.

_____

[7] Respondent alleges that all of Keller's claims are barred by 28 U.S.C. § 2244(d)(1)(A). (Doc. #8, pp. 4-6).

Under North Dakota Century Code section 29-32.1-01(2), Keller was required to file his post-conviction relief application within two years of his convictions becoming final. Keller asserted before the state courts that he met an exception to the state's statute of limitations, (Resp. Ex. #22, p. 3), but the state courts determined that the exception did not apply, see Keller v. State, 869 N.W.2d 424, 434 (N.D. 2015). The state courts' decision that Keller's claims were barred by the state's statute of limitations is an independent and adequate state law ground.[8] This court is bound by the state courts' interpretation of the state statute of limitations. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Even if the state courts misapplied the statute of limitations, that would not constitute a basis for federal habeas relief. See Evanstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006). Keller's claims that the state courts violated his due process and equal protection rights by finding that his August 8, 2014 post-conviction relief application was time-barred should therefore be dismissed.

It is unclear whether Keller also asserts claims of ineffective assistance of post-conviction relief counsel or irregularities in the state post-conviction relief proceedings. (See Doc. #1, pp. 1, 4). To the extent that he raises those claims, however, they are not

---

[8] Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Therefore, even if Keller's claims that the jury instructions violated his due process rights were timely under the AEDPA's one-year limitation period, this court would be prohibited from reviewing those claims unless Keller established cause for his failure to comply with the state statute of limitations and resulting prejudice, or unless he established that this court's failure to consider the claims would result in a fundamental miscarriage of justice. Id. at 750. Since the court cannot conclude that Keller's claims were timely under the AEDPA, it cannot consider the cause and prejudice or miscarriage of justice exceptions.

cognizable in a federal habeas petition. See Coleman v. Thompson, 501 U.S. 722, 752

(1991) ("There is no constitutional right to an attorney in state post-conviction

proceedings."); Williams-Bey v. Trickery, 894 F.2d 314, 317 (8th Cir. 1990) ("[A]n

infirmity in a state post-conviction proceeding does not raise a constitutional issue

cognizable in a federal habeas petition."). Those claims should therefore be dismissed.

### Conclusion

Keller's claims that the state district court's jury instructions violated his due

process rights are barred by the AEDPA's statute of limitations, and he is not entitled to

equitable tolling of the AEDPA one-year limitation period. Keller's other claims are not

cognizable. Accordingly, it is **RECOMMENDED** that the respondent's motion to

dismiss, (Doc. #7), be **GRANTED**, and Keller's petition for habeas relief, (Doc. #1), be

**DISMISSED** with prejudice.

In light of the issues raised, an appeal may not be frivolous, and the undersigned

therefore **RECOMMENDS** that, if the district judge adopts the recommendation made

in this report, a certificate of appealability be issued if one is requested.

Dated this 27th day of June, 2016.

 /s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge


### NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, and District of North

Dakota Local Court Civil Rule 72.1(D)(3), plaintiff may object to this Report and

Recommendation by filing with the Clerk of Court no later than July 14, 2016, a pleading

specifically identifying those portions of the Report and Recommendation to which

objection is made and the basis of any objection. Failure to object or to comply with this

procedure may forfeit the right to seek review in the Court of Appeals.